UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LORENE P. WEST,**

    **Plaintiff,**

v.                                                                                      Case No.  8:06-cv-452-T-TBM

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments.  For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty years of age at the time of her first administrative hearing in 1995. Plaintiff has a limited, eighth-grade education and can read and write only a little.  Her past relevant work was primarily in food preparation.  She has tried work as a dishwasher, baker, and recreational aide to handicap individuals, and more recently, part-time work as a school crossing guard.  Plaintiff first filed applications seeking disability benefits and Supplemental

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

Security Income (hereinafter "SSI") payments in August 1992. These applications were denied originally and on reconsideration, and no further review was sought. Plaintiff again applied for disability benefits and SSI payments in May 1993, alleging disability as of November 1991 by reason of disabling low back pain, bronchitis, left knee pain, chest pain from a stabbing, and a bad left hand. These applications were denied throughout the administrative process, and the final decision of the Commissioner adopting the March 31, 1995, decision of Administrative Law Judge O'Neil was appealed to this court. By Order dated February 18, 1997, the administrative decision was reversed and the matter was remanded for further proceedings consistent with the Report and Recommendation of the magistrate judge. (R. 747-49). Plaintiff filed another application for SSI payments in November 1995, alleging disability as of April 1995 by reason of back, knee, and chest pain, hepatitis, and left hand swelling. This application was likewise denied throughout the administrative process and appealed to this court. By Order dated November 2, 1998, the district court reversed and remanded the decision of Administrative Law Judge Friedman on a motion for remand filed by the Commissioner. (R. 373). On December 14, 1998, the Appeals Council consolidated the separate actions, vacated the final decisions, and directed an Administrative Law Judge (hereinafter "ALJ") to conduct further proceedings consistent with the court's Orders.[2] The administrative hearing on remand was conducted April 14, 1999.

---

[2]In April 1998, the Plaintiff again filed applications for disability benefits and SSI payments alleging disability as of November 1991 by reason of back pain, liver problems, and problems with her hands. (Doc. 237). In June 2001, Plaintiff filed another application for SSI payments alleging disability as of August 26, 1999. These applications were considered by the Social Security Administration to be duplicates of the then pending applications, and because administrative remedies were not exhausted, they were forwarded unprocessed for

(R. 37-55). By Order dated August 25, 1999, the ALJ again denied the applications (R. 16-29), and the Appeals Council denied the request for review in August 2001 (R. 8-10). Plaintiff appealed and the decision was again reversed and remanded by this court on December 2, 2002. (R. 820-31).

The hearing on remand was conducted August 20, 2003.[3] The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ. Plaintiff reiterated that she had an eighth-grade education and could read and write "a little bit." Plaintiff testified she was currently employed, finishing up work with the Tampa Housing Authority. She explained that she was under a one year contract as an out-reach worker helping with the relocation of people being moved out of public housing projects. By her testimony, she was earning approximately $500 per month from this job. Prior to this, Plaintiff had performed part-time work as a school crossing guard, off and on, for about five years. This work involved approximately three to four hours of work per day. Besides these two jobs, Plaintiff claimed she had not worked at any other job since 1991.

Plaintiff claimed that she was incapable of working a full-time position, forty hours per week, because of pain associated with a bulging disc in her back, pain and swelling in her hands, swelling in her left knee, hepatitis C, bronchitis, and shortness of breath. Her back condition, the swelling in her leg and the fact that she gets tired prevent full-time work.

---

association with the claim then under appeal. See (R. 766 n.1-2).

[3] At this hearing, counsel for the Plaintiff advised the ALJ that another application had been filed in June 2001, and it too was to be considered at the hearing.

Plaintiff estimated she can sit for only fifteen to twenty minutes at a time and stand for about ten minutes at a time.  Plaintiff also estimated she could work two to three hours total if she were permitted to sit and stand.  According to the Plaintiff, she can lift a gallon of milk, but a bag of potatoes is heavy on her hands and difficult to lift.  She also claimed that the fingers on both of her hands swell, and it hurts for her to make a fist.  For relief, she runs hot water over her hands.  Plaintiff also complained of fatigue; she testified that the hepatitis C leaves her tired and by the end of the day she is "extremely tired."  By her testimony, if she could, she would stay home from her present job two days a week.  Plaintiff has not seen a doctor since 2002 because she lacks money or any form of insurance coverage.  She uses a knee brace and occasionally takes her relatives' medicines for pain and something like Ben Gay on her back for relief of the pain.  See Plaintiff's testimony (R. 1079-95).

The ALJ also took testimony from Teresa Manning, a vocational expert (hereinafter "VE").  The witness testified on an assumption of an individual of the same age, education, and work experience of the Plaintiff, with the residual functional capacity to perform light work with a sit/stand option, only occasional bending, stooping, crouching, and repetitive use of the hands, but capable of performing simple routine tasks.  On the basis of this hypothetical, the witness opined that Plaintiff could not do her past relevant work but could perform work as a toll collector, gate guard, and parking lot cashier.  On questioning by Plaintiff's counsel and on the additional assumption that such hypothetical person could only use their hands for fingering and handling up to a third of the day, but no more, the witness opined that the gate guard job would not be impacted by the additional limitations.  As for the

jobs of toll collector and parking lot cashier, the number of such jobs would be impacted by the additional limitation. The witness further opined that typically unskilled workers could miss one day a month and maintain employment (but no more.) Of the jobs she identified, the VE opined that none of them allowed for unscheduled work breaks. See VE's testimony (R. 1095-1102).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are discussed herein as necessary. Additionally, significant to her claim for disability insurance benefits is Plaintiff's date last insured, December 31, 1993.[4]

By his decision of October 24, 2003, the ALJ determined that while Plaintiff has severe impairments related to a history of bronchitis, costochondritis, and gastritis; an avulsion fracture of the left wrist; degenerative disc disease; degenerative joint disease with a herniated disc and radiculopathy; post traumatic headaches; a tear of the medial meniscus of the left knee; osteoarthritis; and chronic alcoholism with alcoholic hepatitis; and was status post stab wound to the left clavicle area of the chest, she nonetheless had the residual functional capacity to perform a broad range of light exertional work that allowed for a sit/stand option and required only simple, repetitive tasks and only occasional bending, stooping, crouching, and repetitive use of her hands. Upon this finding and testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R.

---

[4]Thus, Plaintiff must prove that she was disabled on or before this date or her claim for disability insurance benefits is lost. Ware v. Schweiker, 651 F.2d 408 (5th Cir. 1981)

765-783). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of

Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises a single claim on this appeal. By her assertion, the ALJ erred by not finding that she was disabled under Listing 12.05(C). Citing Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir.1992), Plaintiff urges that generally, a claimant meets the criteria for

presumptive disability under Section 12.05(C) when the claimant presents a valid IQ score of 60-70 inclusive, and evidence of an additional mental or physical impairment that has more than minimal effect of the claimant's ability to perform other basic work activities.[5] Citing the psychological evaluation of Dr. Steven F. Wu, in particular, his assessment of her IQ[6] and the other diagnoses listed in his report related to herniated/bulging disc, carpal tunnel syndrome or arthritis, left leg pain and swelling, and hepatitis, Plaintiff maintains that she meets the listing. She urges the court to reverse the ALJ's decision and remand her case for an award of benefits on this basis. In the alternative, Plaintiff requests that her case be remanded for proper consideration of this issue. (Doc. 13).

In response, the Commissioner argues that Plaintiff failed to prove that her impairments satisfied all of the requirements of Listing 12.05(C) because she is unable to show deficits in adaptive functioning prior to age 22 and her reliance on a listing level IQ score after that age, standing alone, fails to carry the day. The Commissioner also points out that the record before the ALJ did not contain a diagnosis of mild mental retardation. Thus, by the Commissioner's argument, the ALJ did not err by failing to find that Plaintiff's impairments met Listing 12.05(C) because nothing in the record supported such a finding. On

---

[5]Plaintiff also cites to Hodges v. Barnhart, 276 F.3d 1265 (11th Cir.2001), wherein the Eleventh Circuit joined other circuits in recognizing that because a person's IQ remains stable over time in the absence of any evidence of a change in intellectual functioning, it may be presumed that a claimant was mentally impaired (in the context of this listing) prior to the age of twenty-two even in the absence of an affirmative showing where the evidence established later IQ scores in the mentally retarded range.

[6]Test results from the Wechsler Adult Intelligence Scale test reflected a verbal IQ score of 66, a performance IQ score of 68 and a full scale IQ score of 64. (R. 1062-63).

8

a related note, the Commissioner contends that Plaintiff's argument is flawed because it relies on evidence that was not before the ALJ, namely, Dr. Wu's report. By this contention, that evidence may be considered only to the extent necessary to determine whether it warrants a remand under sentence six of 42 U.S.C. 405(g). To this end, the Commissioner argues that a remand on this basis is not warranted because Plaintiff fails to address the matter, and in any event, the evidence is not material and there is no apparent good cause for failing to submit it to the ALJ. (Doc. 16).

At step three of the sequential analysis, an ALJ considers the severity of a claimant's impairments, including whether or not a claimant has an impairment that meets or equals a listed impairment in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). This listing of impairments in the Social Security Regulations identifies impairments that are considered severe enough to prevent a person from engaging in gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a claimant is presumptively determined to be disabled regardless of her age, education, or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. Edwards v. Heckler, 736 F.2d 625, 628 (11th Cir. 1984). The claimant has the burden of establishing the existence of such an impairment or combination of impairments. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). The alleged impairment or combined impairments must meet or equal all the requirements of a listing. Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). To satisfy the burden, the claimant must present specific findings that meet the various tests listed under the

applicable listing. Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986). Mere diagnosis of a listed impairment is by itself not sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings. Carnes, 936 F.2d at 1218. If a claimant contends that an impairment equals a listed impairment, the claimant must present evidence that describes how the impairment has such an equivalency.[7] Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

> Listing 12.05(C), at issue in this case, provides in relevant part:
>
>> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>>
>> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>> ***
>> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R., Pt. 404, Subpt. P, App. 1, §12.05(C). Thus, under this listing, a claimant must at least have (1) significantly subaverage general intellectual functioning, (2) deficits in adaptive behavior, and (3) manifested deficits in adaptive behavior before age 22. Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). As Plaintiff urges, in this circuit, it is presumed that an individual's IQ remains fairly constant throughout his or her life (absent evidence of sudden trauma that can cause retardation), and a valid IQ test meeting the listing criteria creates a

---

[7] To "equal" a listing, "the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002).

rebuttable presumption that the condition manifested itself before age twenty-two. Hodges, 276 F.3d at 1269.

 Upon careful consideration, I am unable to conclude that Plaintiff is entitled to relief on this claim. At the outset, I agree with the Commissioner that it is improper to consider the evidence on which Plaintiff relies in determining whether the ALJ's finding at step three of the sequential evaluation[8] is supported by substantial evidence. While that evidence, i.e., the report of Dr. Wu, predated the ALJ's decision, it was not presented to the ALJ. Rather, Plaintiff submitted it only to the Appeals Council, which denied review of the ALJ's decision. (R. 758). As the Eleventh Circuit has held, "when the [Appeals Council] has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998) (providing that, while evidence presented for the first time to the Appeals Council is part of the record, only evidence presented to the ALJ will be considered in determining whether substantial evidence supports the ALJ's decision). Thus, any [medical] opinions reported after the ALJ's final decision, and not presented to the ALJ, may not be considered in assessing whether substantial evidence supported the ALJ's determination.[9] See

---

[8]Here, the ALJ determined that Plaintiff's impairments or combination of impairments did not meet or medically equal the requirements of a listed impairment. (R. 775, 781). In doing so, the ALJ indicated that he gave particular consider to Listings 1.01, 1.04, 3.02, 5.05, and 12.09. (R. 775).

[9]Notably, Plaintiff does not seek review of the Appeals Council's denial of review or allege that it refused to consider the newly submitted report of Dr. Wu. See (Docs. 1, 13). For this reason, Plaintiff's case falls squarely within Falge and does not implicate the holding in Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

id. Absent Dr. Wu's reported IQ scores, the record is devoid of any evidence suggesting that Plaintiff's impairments met the intellectual requirements of the listing for mental retardation and the ALJ cannot be faulted for failing to find otherwise. Although Plaintiff claims that Dr. Richard Carpenter's opinion that her intelligence was in the "low average to borderline range" supports Dr. Wu's subsequent testing results, that opinion, standing alone, does not bolster Plaintiff's claim, particularly in light of the fact that neither Plaintiff nor her attorneys ever alleged a deficit in intellectual functioning as a basis for disability. As such, the ALJ did not err by failing to find that Plaintiff's impairments met the listing requirements under Listing 12.05(C). See Carnes, 936 F.2d at 1218; Sullivan, 493 U.S. at 530-31. Morever, given that nothing in the record before the ALJ alerted him to the fact that Plaintiff may have had such intellectual deficits, his finding to the contrary is supported by substantial evidence.[10]

Furthermore, Plaintiff does not argue that Dr. Wu's report is new evidence such that a remand under sentence six of 42 U.S.C. § 405(g) is warranted. In this circuit, a remand for consideration of new evidence is appropriate where the Plaintiff demonstrates that: "(1) there is new, non-cumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." Vega v.

---

[10]Likewise, Plaintiff fails to prove that her impairment establishes a listing equivalence. As noted above, it is Plaintiff's burden to show that she equals a listing. See Carnes, 936 F.2d at 1218. Because Plaintiff presented no evidence describing how her impairment(s) have such an equivalency, she has failed to meet her burden of proof and, therefore, may not prevail on this claim. See Wilkinson, 847 F.2d at 662 (providing that, if a claimant contends that an impairment equals a listed impairment, she must present evidence that describes how the impairment has such an equivalency).

Comm'r of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001) (quoting Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986) and citing Falge, 150 F.3d at 1323).

Application of this standard does not warrant a remand. Here, Dr. Wu's evaluation is arguably new, non-cumulative evidence as it was not contained in the administrative record [before the ALJ] and it relates to the time period on or before the date of the ALJ's decision. See Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir.1988); 20 C.F.R. §§ 404.970(b), 416.1470(b); see also Falge, 150 F.3d at 1324. However, it is questionable whether the evaluation would satisfy the materiality requirement because it is not clear whether Dr. Wu's reported IQ scores would change the administrative result.[11] See Falge, 150 F.3d at 1323. Even assuming that they would, the good cause requirement would not be satisfied because Dr. Wu's report did exist at the time of the administrative proceedings and Plaintiff makes no showing of why it was not submitted in a timely fashion. See Cannon, 858 F.2d at 1546. For this reason alone, a remand under sentence six is not warranted.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is

---

[11] Although Plaintiff presented evidence to the Appeals Council of an allegedly valid IQ score of 60-70, she has not met her burden since she did not present evidence on the other requirements of Listing 12.05, specifically, that of deficits in adaptive functioning consistent with the diagnostic description of mental retardation. Notably, Dr. Wu's report, on which Plaintiff relies, indicates that the diagnosis of mild mental retardation is by IQ test alone and that no adaptive behavior scale was administered. (R. 1065).

13

otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 2nd day of March 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record